# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 22-1283V
UNPUBLISHED

|  |  |
|---|---|
| JESSICA HAMPTON,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: May 1, 2026 |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY, for Petitioner.*

*Margaret Armstrong, U.S. Department of Justice, Washington, DC, for Respondent.*

## <u>RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES</u>[1]

On September 13, 2022, Jessica Hampton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging the Table injury of a right shoulder injury related to vaccine administration ("SIRVA") due to receipt of a Tetanus-Diphtheria-Acellular Pertussis ("Tdap") vaccine on December 12, 2021. Petition at 1 (ECF No. 1). The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons set forth below, and after holding a "Motions Day" hearing on entitlement and damages, I find that Petitioner is entitled to compensation, and I award

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

damages in the amount of **$151,786.89**, **representing $148,000.00 for actual pain and suffering, plus $3,786.89 in unreimbursed out-of-pocket medical expenses.**

### I.    Relevant Procedural History

This case was activated from "pre-assignment review" on October 21, 2022. (ECF No. 10). Thereafter, Petitioner filed additional medical records. Once Respondent had opportunity to review the record, he concluded that he did not believe compensation was appropriate in this case, filing a contesting Rule 4(c) Report on February 20, 2024. Petitioner filed her Motion for Ruling on the Record and Brief in Support of Damages on March 5, 2024. (ECF No. 29). Respondent filed his Response Brief on May 31, 2024. (ECF No. 35). Petitioner filed a reply June 10, 2024. (ECF No. 36).

On February 27, 2026, I proposed this case for an expedited hearing on March 27, 2026, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. (ECF No. 37). The parties agreed, and the "Motions Day" hearing took place as scheduled. During the hearing, I orally ruled on Petitioner's entitlement to compensation and then made an oral damages determination. This Decision memorializes those findings and determinations.

### II.    Factual Findings and Ruling on Entitlement

### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed.

Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

Respondent contests entitlement based on two of the four QAI criteria - whether the onset of Petitioner's pain occurred within 48 hours of vaccination, and whether there is another condition or abnormality that would explain Petitioner's symptoms. Response at 14-17. Regarding onset, Respondent emphasizes that Petitioner did not report or seek treatment for her alleged right arm pain until February 8, 2022, almost two months post-vaccination, despite having six intervening medical appointments which were mostly related to injuries sustained by Petitioner in a hiking accident. Response at 14. Respondent also argues that the contemporaneous medical records consistently make generalized references to right arm pain beginning after vaccination, but without specifying a more precise onset. *Id.*

I find that the delay in question was not facially unreasonable, especially in comparison to what has characterized the course of seeking treatment for many other successful claims. Vaccine Act claimants reasonably expect any post-vaccination pain to be transient, or not serious enough to merit evaluation by a medical professional. And in this case, Petitioner's intervening medical appointments were almost entirely related to treatment for injuries sustained in a hiking accident. Resolving those issues (including having medical staples removed from her head) superseded Petitioner's concern over her right shoulder pain from vaccination. Additionally, although the records could contain more clarity on a specific onset timeframe, they do not propose an onset date outside the Table timeframe. Therefore, I find that Petitioner has established onset by preponderant evidence.

Respondent also argues that another condition or abnormality is present that would explain Petitioner's symptoms, including Petitioner's preexisting carpal tunnel syndrome ("CTS") and possibly undiagnosed cervical radiculopathy. Response at 16-17. Respondent notes that Petitioner declined to undergo an NCS/EMG to confirm that CTS was the source of her right hand numbness, and to rule out the potential for cervical radiculopathy. *Id.* at 17. However, based on the record it appears that Petitioner's CTS

4

was a comorbid condition rather than an active contributor to her right shoulder pain. Petitioner has noted that she previously experienced issues with CTS during her pregnancy, which predated the casual vaccination. Furthermore, none of Petitioner's treating physicians ever attributed her fingertip numbness to her shoulder injury, and as Petitioner notes there are no medical records linking Petitioner's right shoulder injury to her right fingertip paresthesia, CTS, or cervical radiculopathy. Thus, based on a preponderance of the evidence, although it is undisputed that Petitioner had underlying, comorbid CTS, that condition is not sufficient to explain Petitioner's right shoulder symptoms. Petitioner has established the fourth QAI requirement.

Otherwise, the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iii)-(iv). A thorough review of the record in this case does not reveal any history of pain or dysfunction in Petitioner's right shoulder prior to receiving the Tdap vaccine. The record also reflects that Petitioner's symptoms from her SIRVA were limited to her right shoulder. As I stated during the expedited hearing, all elements of a Table SIRVA claim have been preponderantly established.

### C.  Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

Respondent notes that the vaccine administration record documents an injection in Petitioner's *left* arm, not her right. Response at 13. Respondent then argues that Petitioner has failed to offer preponderant evidence that she received the vaccination in her right arm as alleged, because she has failed to produce any extrinsic evidence and that any later statements that she received the flu vaccination in her right arm should not outweigh the contemporaneous medical record that clearly documents administration in her left arm. *Id.*

Upon consideration of the record, I find that it is more likely than not that the notation for administration in the left arm for the December 12, 2021 vaccination is in error. This kind of documented vaccine administration error has previously been noted as "an issue that arises repeatedly in the specific context of SIRVA, both because SIRVA is a localized injury occurring near the site of injection and that because experience . . . has shown that pharmacy vaccine administration records are not necessarily reliable in documenting injection site." *Mezzacapo v. Sec'y of Health & Hum. Servs.*, No., 2021 WL 1940435, at *6 (Fed. Cl. Spec. Mstr. Apr. 19, 2021). In *Mezzacapo*, testimony given by a

Rite Aid pharmacist established that this error typically stems from inputs to be completed prior to the actual vaccination, because the request must be processed through the vaccinee's insurance, and that she always listed a left-arm injection site because most people are right-hand dominant. *Mezzacapo,* 2021 WL 1940435, at *6. This testimony was deemed consistent from similar testimony from other pharmacists in other cases. *Id.*

Although the record in the instant case does not contain any comparably-strong extrinsic evidence, I note that in every medical visit associated with her SIRVA, Petitioner consistently described the inciting event as a vaccination received in her right shoulder. In this case, that is enough to meet the preponderant test.

Regarding the other requirements, there is ample proof that Petitioner suffered the residual effects of her injury for more than six months, and there is no indication that she has received any other award or settlement as a result of this injury. Therefore, Petitioner has satisfied all of the requirements for compensation.

### III.    Compensation to be Awarded

### A.  Parties Arguments

Petitioner requests $150,000.00 for actual pain and suffering, maintaining that her treatment involved multiple doctor's appointments, three MRIs, 21 sessions of physical therapy, two steroid injections, and an ultrasonic percutaneous tenotomy of her right anterior supraspinatus tendon. Petitioner also alleges that she still experiences the sequela of her SIRVA injury to this day. Mot. at 12. She favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Tumolo, S.C., and Reed,* who received $170,000.00, $160,000.00, and $160,000.00 respectively, for their past pain and suffering.[4] *Id.* at 29-31. Petitioner also requests $3,786.89 in unreimbursable out-of-pocket medical expenses. *Id.* at 31.

Respondent asserts that Petitioner should receive the lesser amount of $35,000.00. Response at 30. Respondent argues that the facts and circumstance more closely resemble the circumstances of the petitioners in *Allner* and *Clendaniel*, in which petitioners were each awarded $60,000.00.[5] *Id.* at 29-30. Respondent also notes that his

---

[4] *Tumolo v. Sec'y of Health & Hum. Servs.,* No. 16-343V, 2020 WL 6279711 (Fed. Cl. Spec. Mstr. Oct. 1, 2020); *S.C. v. Sec'y of Health & Hum. Servs.*, No. 19-341V, 2021 WL 2949763 (Fed. Cl. Spec. Mstr. June 14, 2021); *Reed v. Sec'y of Health & Hum. Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019).

[5] *Allner v. Sec'y of Health & Hum. Servs.*, No. 19-1048V, 2022 WL 6962656 (Fed. Cl. Spec. Mstr. Sept. 9, 2022); *Gootee v. Sec'y of Health & Hum. Servs.*, No. 22-827V, 2024 WL 5295109 (Fed. Cl. Spec. Mstr. Dec. 2, 2024).

proposed amount is inclusive of both pain and suffering and unreimbursable expenses. Response at 19.

### B.  Legal Standards for Pain and Suffering Awards

In another decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y of Health & Hum. Servs.*, No. 19-1727V, 2022 WL 3152827 (Fed. Cl. Spec. Mstr. July 6, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

### C.  Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, signed affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on March 27, 2026. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Pursuant to my oral ruling on March 27, 2026 (which is fully adopted herein), **I find that $148,000.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering.**

---

[6] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

In making this determination, I have considered relevant facts such as the moderate course of her injury, with her treatment lasting for approximately 20 months. During this time, Petitioner reported pain levels from 3/10 at best (prior to surgery) and 8/10 at worst, and most frequently reported at 4-6/10. She also attended 21 sessions of physical therapy and had eight chiropractic sessions, although those sessions focused on Petitioner's neck and back in addition to her right shoulder. She also underwent three MRIs (two of her right shoulder and one of her back which aided her treating physicians in ruling out cervical radiculopathy as a cause of her right shoulder symptoms), two steroid injections, and one surgical procedure, an ultrasonic percutaneous tenotomy of the right anterior supraspinatus tendon. As I noted at the hearing, although the tenotomy may not be quite as invasive a procedure as typical arthroscopic surgery, it is substantially invasive *enough* to merit compensation above $100,000.00 (consistent with how SIRVA claims featuring surgery are treated in the Vaccine Program).

The overall severity of the SIRVA in the instant case was not high enough to warrant $150,000.00, however. The cases cited to by Petitioner where such an award was issued are distinguishable due to the greater severity of injury in those circumstances. The *Tumolo* petitioner, for example, underwent one arthroscopic surgery, two injections, four MRIs, and 14 sessions of PT – however the clinical course of treatment was approximately four years, substantially longer than the instant case. *Tumolo*, 2020 WL 6279711, at *14-15.  The *S.C.* petitioner also had one surgery, four injections and 95 PT sessions over an approximately three year treatment course, again making it a more severe overall injury than Ms. Hampton suffered. *S.C.*, 2021 WL 2949763, at *4-5.

However, Petitioner notably has not asked for an amount commensurate with those awarded in *Tumolo, S.C.,* or *Reed*, in which pain and suffering damages of $170,000.00, $160,000.00, and $160,000.00 were each awarded respectively. Indeed, Petitioner has acknowledged that the tenotomy is not quite as invasive as an arthroscopy, and tailored her demand accordingly. Mot. at 30-31. The awareness to compare the injuries in terms of pain levels and relative course of treatment while acknowledging the parts of that treatment that were less severe bulwarks the reasonableness of Petitioner's demand.

Respondent's cited cases of *Allner* and *Clendaniel* are distinguishable as far less severe injuries than the instant case. Neither case involved any surgical intervention, and both involved lower pain levels, fewer MRIs, and much fewer PT required (the *Allner* petitioner had eight PT sessions while the *Clendaniel* petitioner did not have any PT at all, instead relying on arthrocentesis procedures more similar in invasiveness to a steroid

8

injection). And each of those petitioners was ultimately awarded $60,000.00 for their pain and suffering – more than Respondent has proposed in this matter.[7]

Taking into account the record of Petitioner's SIRVA and the comparable cases cited by Petitioner and Respondent, as well as my experience in adjudicating similar cases, I find that $148,000.00 represents a reasonable amount of compensation for Petitioner's actual pain and suffering.

### D. Appropriate Compensation for Past Unreimbursable Expenses

In addition to pain and suffering damages, Petitioner has requested that she be awarded $3,786.89 in past unreimbursable expenses. Motion at 31. Petitioner has also filed adequate documentation supporting these incurred costs. *See generally* Ex. 25. In his Response and also at the hearing, Respondent did not dispute any of these costs as unreasonable but rather reiterated his contention that his proposed amount of $35,000.00 was inclusive of all elements of damages. Response at 30. Because Respondent has not disputed any of Petitioner's claimed expenses and Petitioner has provided sufficient documentation documenting them, Petitioner's past unreimbursable expenses will be fully awarded.

### Conclusion

For all the reasons discussed above, and based on consideration of the entire record, I find that Petitioner's right shoulder injury meets the definition for a Table SIRVA. Thus, Petitioner is entitled to compensation in this case. Furthermore, I find that $148,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering and that $3,786.89 represents a fair and appropriate amount of compensation for Petitioner's past unreimbursable expenses.[8]

**I award Petitioner a lump sum payment of $151,786.89, representing $148,000.00 for actual pain and suffering and $3,786.89 in unreimbursable expenses., to be paid through an ACH deposit to Petitioner's counsel's IOLTA**

---

[7] Respondent argues that $35,000.00 is fair in this case because entitlement had not yet been found for Petitioner, making the amount a reasonable sum in light of litigation risk given his objections. Response at 30. However, while such an offer may be defensible in the context of settlement discussions, it loses its value at this stage (where Respondent should propose what he takes are reasonable damages *assuming* he does not prevail on entitlement – as is the case in this matter).

[8] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

**account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[9]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

10